KOZLOFF STOUDT
Professional Corporation
By:    Jeffrey R. Elliott, Esquire
       PA Supreme Court I.D. #38147
       Joan E. London, Esquire
       PA Supreme Court I.D. #67934
2640 Westview Drive
Wyomissing, PA 19610          ATTORNEYS FOR PLAINTIFF,
(610) 670-2552             MELISSA CHERKASKY

---

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MELISSA CHERKASKY, | : CIVIL ACTION -LAW |
| | : No. |
| Plaintiff | : |
| | : |
| vs. | : JURY TRIAL DEMANDED |
| | : |
| BOYERTOWN AREA SCHOOL | : |
| DISTRICT, | : |
| | : Assigned to: |
| Defendant | : |

---

## COMPLAINT

---

## <u>JURISDICTION AND VENUE</u>

1.    This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. Sections 2201, 2202, 1331, 1343; 42 U.S.C. Section 2000e, *et seq.*, as amended by the Civil Rights Act of 1991, 42 U.S.C. Section 2000e-5(f); and Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972 and the Civil Rights Act of 1991.

2.      This Honorable Court has jurisdiction over this action pursuant to 28 U.S.C. Sections 1331 and 1334, and has jurisdiction over pendent state law claims arising from the same transactions or occurrences and having a common nucleus of operative facts.

3.      Plaintiff has complied with all jurisdictional prerequisites, including those set forth in 42 U.S.C. Section 2000e-5(f), and has exhausted all required state and federal administrative remedies. Plaintiff has proceeded before the Pennsylvania Human Relations Commission (PHRC), and the Equal Employment Opportunity Commission, Plaintiff has been given notice of the right to file a civil action by the EEOC.  (A true and correct copy of the Notice of Right to Sue, dated August 31, 2021, is attached hereto, incorporated herein, and marked as Exhibit "A").

4.      The amount in controversy exceeds One Hundred and Fifty Thousand Dollars and 00/100 ($150,000.00) exclusive of interest and costs.

5.      Defendant, Boyertown Area School District ("Defendant") transacts business within the Commonwealth of Pennsylvania; is engaged in interstate and intrastate commerce; and the acts in question were committed at Defendant's Senior High School facility at 120 North Monroe Street, Boyertown, Berks County, Pennsylvania.

## PARTIES

6.      Plaintiff, Melissa Cherkasky ("Plaintiff"), is an adult individual and a citizen of the United States of America, residing in the Commonwealth of Pennsylvania, with an address of 101 Maple Lane, Douglassville, Berks County, Pennsylvania 19518.

7.     Plaintiff is female and is, accordingly, in the protected class of Title VII and the PHRC, which prohibit discrimination because of sex and sexual harassment.

8.     Defendant is a public school district, educating students in Grades Kindergarten through 12, with a registered address of 911 Montgomery Avenue, Boyertown, Berks County, Pennsylvania 19512.   The acts in question took place on Defendant's Senior High School, at the address above, located in Boyertown, Berks County, Pennsylvania.

9.     Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. Section 2000e(b), (g), and (h).   Accordingly, Defendant is an actor in interstate commerce and subject to federal civil rights laws.

## FACTUAL BACKGROUND

10.     In approximately August of 2003, Plaintiff was hired by Defendant as an English and Language Arts Teacher.

11.     Plaintiff initially taught English and Language Arts to students in the Seventh through Ninth Grades at Boyertown Junior High School East and Boyertown Junior High School West.

12.     Since approximately 2016, Plaintiff has taught Ninth Grade English at Boyertown Area Senior High School.

13.     As a teacher, Plaintiff had received excellent evaluations, and had not historically been subjected to discipline.

14.     In August of 2018, a teenage male student (M.B.), believed to be 15 or 16 years old was assigned to Plaintiff's Ninth Grade English class for the 2018-2019 academic year.

15.     All references to and identification of minor individuals and Defendant School District students in this Complaint are by their initials—the initials of their first and last names as known to Plaintiff and School District officials at relevant times, and not their full first and last names, as a matter of sensitivity to their statuses as minors (under the age of 18 years of age); but they and their personnel files at the Defendant School District are well known to school officials.

16.     On September 14, 2018, Plaintiff contacted M.B.'s parents, as well as the school guidance counselor, as required by Defendant's policies, about M.B.'s low grades, disrespectful attitude towards Plaintiff, and lack of effort in her class.

17.     Throughout the school year, Plaintiff attempted to work cooperatively with M.B. and his parents, and school administration, to improve M.B.'s behavior and academic performance.

18.     M.B. consistently, through the 2018-2019 school year, displayed an attitude and demeanor of disrespect and contempt towards Plaintiff evidencing hostility towards Plaintiff as a woman.

19.     M.B. failed Plaintiff's English class in the 2018-2019 academic year, and was nonetheless re-assigned by Defendant to Plaintiff's Ninth Grade English Class for the 2019-2020 academic year.

20.     In September of 2019, M.B., without permission, justification or legitimate excuse, walked out of Plaintiff's classroom, did not return, and was found by school security officers wandering about the school building.

21.     Plaintiff once again arranged for a meeting with M.B.'s parents, the school guidance counselor, another teacher, and Jared K. Sparks ("Sparks"), a School District Assistant Principal, which meeting took place on October 24, 2019.

22.     Plaintiff advised Defendant's school administrators repeatedly that M.B. was "acting out" in a manner which was openly hostile towards Plaintiff as a woman.

23.     On December 4, 2019, M.B. wrote that Plaintiff was a ***"fucking bitch"*** on the back of an assignment paper, knowing and fully intending that Plaintiff and other students see it.

24.     M.B., repeatedly, openly and with impunity, sneered at, scoffed at, and openly disrespected Plaintiff's authority in the classrooms and hallways, and other school house locations during her employment with Defendant, and solely because of his disdain for Plaintiff as a female.

25.     Plaintiff immediately on or about December 4, 2019 wrote a disciplinary referral to Sparks, who later admitted by e-mail that he had not even bothered to read the

complaint, and dismissively handed the communication to another employee in the office.

26.     Notwithstanding the foregoing dismissiveness of Sparks, M.B. received as a purported disciplinary action from Defendant School District officials a "lunch detention," which is a minor and ineffectual form of *discipline* which does not permit a student to eat his lunch in the school cafeteria, but segregates him from the student body during lunch; he remained in Plaintiff's class.

27.     Plaintiff, responding by e-mail, advised Sparks that following this *lunch detention* M.B.'s behavior was increasingly hostile and harassing toward her as a female, and that such school discipline was ineffectual, and did not stop his harassment of her. School officials ignored, minimized and were dismissive of Plaintiff's complaints, and M.B.'s behavior.

28.     Shortly thereafter, December 18, 2019 Plaintiff was subjected to sexual harassment by another teenage male student in her class, believed to be of the same age as M.B. and a compatriot of M.B., who was present and witnessed M.B.'s harassment and demeaning behavior directed at Plaintiff as a woman, student "A.M."

29.     On December 18, 2019, A.M. placed a sign on Plaintiff's classroom door which stated "***Mrs. Charkasky (sic) is bitch-made***."

30.     School security video available to the Defendant revealed A.M. placing the sign on the Plaintiff's classroom door.

31.     Plaintiff immediately complained to Karen Evans ("Evans"), an Assistant Principal, who called A.M.'s mother on the phone in Plaintiff's presence, and advised A.M.'s mother that her son A.M.'s actions toward Plaintiff "*likely constituted sexual harassment.*"

32.     Evans then asked Plaintiff regarding the incident with A.M., *"[w]hat did you do to cause him to do that?"*, blaming Plaintiff for the sexual harassment.

33.     Just like M.B., teenage male student A.M. received only minor repercussions from the Defendant in the form of a few days of "in-school suspension" and no other substantive disciplinary action for his behavior toward and his mistreatment of Plaintiff; in-school suspension proved to be ineffectual, did not stop the offensive, demeaning harassment of Plaintiff by this male student; and Plaintiff believes and therefore avers that Defendant knew such "discipline" would be ineffectual, and was dismissive of Plaintiff's victimization.

34.     On December 18, 2019, after the A.M. incidents, Plaintiff contacted the School Security Officer, Kristen Yeager ("Yeager"), to again make complaint of discrimination and harassment, because she (Plaintiff) felt increasingly threatened, and without workplace remedy,  and physically ill as a result of the continuing harassment by A.M. and M.B. and the lack of attention to or interest on the part of the Defendant in stopping the now increasingly openly hostile workplace behavior directed by teenage males at Plaintiff in the school because she was a woman.

35.     In response, and notwithstanding earlier complaints from Plaintiff, Yeager advised Plaintiff to "*document these incidents in writing*" which Plaintiff did [again].

36.     Both A.M. and M.B. were allowed to remain in Plaintiff's class at the insistence of the Defendant School District officials, including the Principal and HR officials, despite Plaintiff's repeated pleas that they be removed, and no further actions were taken to investigate or to ameliorate Plaintiff's complaints of the students' sexually harassing behavior, or to address the hostility of these male teenagers toward Plaintiff, their female teacher.

37.     On March 3, 2020, M.B. again became belligerent in Plaintiff's class about an assignment, and, without permission or any legitimate reason, stood up in the middle of her instruction in a physically threatening manner, sneered, leered and stared at Plaintiff, and stormed out of the classroom, slamming the door violently and with great force; this behavior was directed at Plaintiff solely because she was a female, and would not have been directed at a male teacher.

38.     At that same time, yet a third teenage male student in Plaintiff's classroom, approximately the same age as M.B. and A.M., "C.M.," who was also a compatriot of M.B., belittled Plaintiff verbally in front of her class, exclaiming "*you're a horrible teacher,*" and then he too stormed out of the classroom with arrogance and impunity, in front of other students, and without excuse or justification.

39.     Plaintiff immediately called Sparks and security and again complained about such mistreatment directed at her by male students; no action was taken by Defendant School District officials.

40.     Later in that same day (March 3, 2020), M.B. walked by Plaintiff's classroom, stopped, stared and sneered at her, and made other efforts to intimidate and personally threaten Plaintiff; all of which was reported to Defendant.

41.     There were enumerable male teachers in the Defendant School District in the same school building as Plaintiff, who were Plaintiff's *comparators,* none of whom at any time suffered any of the disrespect or the demeaning and derogatory gender-based hostile behavior described herein, and to which Plaintiff was routinely if not daily subjected; and which Defendant officials, particularly male officials Foley, Sparks, Maoury routinely disregarded and dismissed.

42.     Plaintiff repeatedly and unsuccessfully attempted throughout this timeframe to complain and communicate about her gender-based harassment and mistreatment at the hands of male teenage students in the school house, and her related fears for her own physical safety to Defendant to no avail; she complained to her supervisory chain, she complained to School District  security officials, she complained to School District Human Resources officials, all of whom are identified herein, and all of whom without exception were disinterested in her complaints, minimized them, described them as having no remedy, and or ignored them outright.

43.     In fact, to the extent of the existence of any printed policy –which does not exist in any practical sense, Plaintiff attempted to utilize it as best she could understand it to no avail. Defendant did not or refused to follow its own written policies.

44.   On or about March 3, 2020 Plaintiff again complained and gave a statement regarding her classroom treatment by male students, and the lack of attention to her earlier complaints, to Assistant Principal Andrew T. Maoury ("Maoury"), who was Plaintiff's immediate supervisor; in fact, Plaintiff told Maoury and Sparks at this time [again] that the harassment was causing her to become physically ill, and she had to seek medical attention.

45.     Plaintiff asked Maoury and Sparks to remove M.B. from her class, as he appeared to be the "ringleader" of the cabal of harassing disrespectful and contemptuous male students allowed to remain in Plaintiff's classroom; Maoury and Sparks were also told by Plaintiff that the harassment was preventing her from performing her job, and making her sick.

46.     Both Maoury and Sparks ignored Plaintiff's pleas for assistance, and advised her that while M.B. would be "*placed on in-school suspension for a few days*," following his earlier benign cafeteria segregation, "*a schedule or class change, removing M.B. from Plaintiff's classroom, was not an option*."

47.     On March 4, 2020, Plaintiff sent an e-mail to the School Building Principal, Dr. E. Wayne Foley ("Foley"), advising Foley of the above history, and the described harassment, echoing earlier complaints and her pleas for help, and advising that Plaintiff

was scheduled to received medical attention and psychological counseling and therapy due to the anxiety and emotional distress caused by the workplace harassment allowed to exist in this school house.

48.     Foley advised Plaintiff wryly, dismissively, and without any sense of concern or urgency "*we will speak with Maoury and Sparks about your [Plaintiff's] concerns*."

49.     On March 6, 2020, a meeting was held with Plaintiff, Foley, and Dr. Mia Kim ("Kim"), Defendant's [then] Human Resources Director.

50.     At the meeting, Plaintiff once again described in detail to Defendant School District officials the harassment and gender-based discrimination to which she had been subjected, and which she experienced at the hands of the indicated male students, and that she would need to take medical leave if they were not removed from her class, or the harassing behavior didn't stop.

51.     At the end of the meeting, Kim asked Foley if "*at least M.B. could be removed from Plaintiff's class*," to which Foley replied "*No!*"

52.     Plaintiff, as a result, took medical leave effective March 3, 2020, which Defendant's Human Resources officials approved, and pursuant to the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601, *et seq.*

53.     Plaintiff was on FMLA medical leave March 3, 2020 through June 5, 2020, which also ended the 2019-2020 academic year; Plaintiff was compelled to use all of her

available sick leave and personal days to her financial loss, in order to receive pay while on FMLA medical leave for this time period and as a result of the sexual harassing and gender discriminatory behavior to which she was subjected, and for which the Defendant School District did nothing to remedy, and was dismissive of Plaintiff's repeated claims and complaints.

*RETALIATION*

54.     When Plaintiff returned to work, she received her 2019-2020 end-of-year evaluation, underlined completed by Maoury, dated September 1, 2020, and e-mailed to Plaintiff on September 9, 2020.

55.     The evaluation was critical of Plaintiff's professional skills, downgraded Plaintiff from her past consistent designation as "Distinguished" to a lower grade of "Proficient," and made derogatory remarks about her job performance during the immediate past academic year, including the timeframes between December 2019 and March 2020.

56.     The evaluation authored by Maoury, endorsed by Foley and reviewed and approved by Human Resources, included negative comments and remarks about Plaintiff's teaching skills which had not occurred prior to her complaints of sexual harassment; such derogatory evaluative comments had never been made about Plaintiff in all of her years of service to the Defendant School District.

57.     Plaintiff and Maoury met virtually on September 24, 2020, to discuss his derogatory remarks on the 2019-2020 evaluation; Maoury denied they were derogatory and belittled Plaintiff for complaining they were.

58.     Maoury told Plaintiff that he had "***downgraded her***" from "Distinguished" to "Proficient" in "Planning and Preparation" and "Engagement with Students," because she purportedly "***did not meet requirements for the higher score***." The downgrading and the assertions by Maoury were false and unjustified.

59.     Maoury, when questioned by Plaintiff about the relationship between Plaintiff's history of sexual harassment and gender discrimination complaints in the Defendant School District's workplace and his downgraded and derogatory performance appraisal for the same or ensuing academic year, refused to provide Plaintiff with any specific basis for the downgraded evaluation or the categories in which he rated/scored her as not meeting requirements for the "Distinguished" score.

60.     Plaintiff complained to School District officials that their actions in respect to this downgraded annual performance evaluation were retaliatory and would adversely affect her career course with the School District and were likely illegal; her complaints about the retaliatory nature of Maoury's evaluation were ignored.

61.     Maoury had visited Plaintiff's classroom to observe her teaching on more than one occasion <u>during the evaluated academic year</u>, with the last time being on February 5, 2020, and he did not make any negative comments on any of those occasions of his personal observation visits, to the contrary Maoury in fact only praised Plaintiff at

that time, including making comments praising Plaintiff in the same evaluative categories where he inconsistently downgraded her in the 2020-2021 evaluation.

62.     Maoury, when asked, refused to provide any reason for his negative comments and the downgrading of Plaintiff's scoring on evaluations from prior, regularly "Distinguished" evaluations; in fact, Maoury scoffed at and minimized Plaintiff's concerns about the evaluations, even stating "*no one reads those things anyway*" dismissing Plaintiff's specific complaints about the retaliatory nature of his recent evaluations.

63.     Maoury exhibited no knowledge of what the proper course of action would be if a female teacher such as Plaintiff reported sexual harassment and gender/sex discrimination to School Officials; in fact, throughout this defined time period neither school administration nor Human Resources officials were interested in resolving matters of her complaints, and instead seemed intent on dismissing and ignoring her claims altogether.

64.     Oddly, Maoury arrogantly bragged he had "*no knowledge of Defendant's equal employment opportunity and anti-harassment policy, or its complaint procedures*" to file and communicate such complaints.

65.     Plaintiff then again reported her concerns in writing to Defendant School District's Human Resources officials, including specifically Virginia Fredericksen ("Fredericksen"), the newly assigned Human Resources Director (who succeeded or replaced Kim).

66.     On November 12, 2020, Plaintiff met with Fredericksen and Maoury, and [yet again] reviewed the above described history of abuse and harassment, and expressed her belief that the downgraded evaluation from Maoury constituted retaliation for Plaintiff's having reported and complained about sexual harassment and discrimination associated with the aforesaid group of male teenage students' behavior toward her.

67.     Fredericksen and Maoury were dismissive of Plaintiff's complaints of having suffered sexual harassment and retaliation.

68.     Throughout the 2020-2021 academic year, Plaintiff continued to suffer retaliation in the form of dismissiveness or outright being ignored, shunned as an outcast, and excluded from regular course of professional and personal discourse and school affairs to her substantial detriment, resulting in her filing of a formal Charge of Discrimination with the U.S. Equal Employment Opportunity Commission in Philadelphia in March 2021  against Defendant,  and while knowingly concerned about her ability to remain employed in what had now become an extremely hostile workplace environment where Plaintiff was treated as a pariah by Defendant officials—in fact, she was even hand delivered by Defendant's Human Resources officials a letter authored by the solicitor to the School District who acknowledge her EEOC Charge of Discrimination, intended to intimidate her pending Charge of Discrimination, her "preservation of evidence" and eventuality of litigation.

69.     On June 14, 2021, as a result of continued intolerable working conditions, and related ill health, Plaintiff resigned (was constructively terminated) from her position as a teacher with the Defendant School District after Eighteen (18) years of service to it.

70.     During her employment, Plaintiff carried out all required duties of her employer and did so in a satisfactory and worker-like manner in accordance with Defendant's rules, regulations, policies, established procedures, and managerial/supervisory directives.

71.     Plaintiff was subjected to retaliation after complaining of the above-referenced harassment and discrimination in the form of a downgraded evaluation with no legitimate basis, leading ultimately to the constructive termination of her employment.

72.     Any equal employment opportunity policy which Defendant may claim to have in place at any relevant time,  was at all times relevant, totally ineffective and legally insufficient to protect Plaintiff in this workplace, or afford Defendant any defenses under the law; Defendant's claims to the existence of such a policy are inconsistent with the comments of School officials (as described herein) and the reality of Plaintiff's workplace treatment by School officials including the Principal, multiple Assistant Principals, and multiple Human Resources officials.

## CLAIMS

### COUNT I
### SEXUAL HARASSMENT AND RETALIATION UNDER
### SECTION 703 OF TITLE VII, 42 U.S.C. 2000e-2

73.     The averments set forth in Paragraphs 1 through 72, above, are incorporated by reference as if the same were set forth more fully at length herein.

74.     The above-referenced acts were pervasive, severe, and regular.

75.     The acts in question detrimentally affected Plaintiff, and caused physical and psychological injury.

76.     Being called filthy sexually demeaning names, and routinely being subjected to gender-based disrespect by students without disciplinary repercussions to the perpetrators which would detrimentally affect a reasonable person of the same sex as Plaintiff (female) in that position.

77.     The administrators and officials of Defendant who knew of the conduct and failed to investigate or take remedial action regarding it, during all times relevant to this action were employed by Defendant and/or acting on behalf of Defendant, giving rise to liability to Defendant under the doctrine of *respondeat superior*.

78.     Defendant failed to properly investigate and take prompt remedial action upon receiving complaints from Plaintiff of the above-referenced harassment and discrimination, allowing such harassment and discrimination to worsen and continue unabated.

79.     The conduct, as described hereinabove, created a physically threatening, hostile and offensive work environment for Plaintiff.

80.     M.B., A.M., and C.F. felt entitled and empowered in the environment facilitated by Defendants to freely harass and disrespect Plaintiff as a woman, and did not believe that they were subject to her authority, as they did with male counterpart teacher employees of the Defendant School District.  Male teachers in this school and throughout the Defendant School District were not treated in this manner; by students or by administration officials.

81.     The acts in question were not isolated incidents, as they occurred unabated on a regular basis.

82.     The above-referenced actions constituted hostile work environment sexual harassment.

83.     The constructive termination of Plaintiff's employment is attributable to Defendant, and was in direct retaliation for Plaintiff's having made the aforementioned complaints.

84.     Plaintiff, by the conduct set forth at length above, was harassed and discriminated against because of her gender, and suffered retaliation for making complaints of sexual harassment and sex discrimination.

85.     The acts, failures to act, practices, and policies of Defendant through its officers, directors, administrators, and employees, as set forth above, constitute sexual harassment in violation of Section 703 of Title VII, 42 U.S.C. Section 2000e-2.

86.     Defendant has failed or refused to take all reasonable steps required by law to prevent and/or remedy the hostile workplace environment described herein.

87.     Plaintiff availed herself of all available reporting and/or remedial procedures, but the harassment continued unabated.

WHEREFORE, Plaintiff respectfully requests judgment in her favor, and against Defendant, and an award granting her relief including but not limited to the following:

a)      Back pay and all other benefits, perquisites, and compensation which Plaintiff would have received had she maintained her employment, including but not limited to lost wages, pay increases, and bonuses;

b)      Front pay;

c)      Reimbursement for all costs, expenses, and financial losses Plaintiff has incurred as a result of the above-described actions;

d)      Reasonable attorneys' fees and costs;

e)      Compensatory damages;

f)      Punitive damages; and,

g)      Such other relief as the Court may deem appropriate.

## COUNT II
## GENDER BASED DISCRIMINATION AND RETALIATION
## UNDER SECTION 703 OF TITLE VII,
## 42 U.S.C. SECTION 2000e-2

88.     The averments set forth in Paragraphs 1 through 87, above, are incorporated by reference as if the same were set forth more fully at length herein.

89.     The conduct of Defendant's administrators and employees, as set forth above, is attributable to Defendant under the doctrine of *respondeat superior.*

90.     The conduct in question by the students was directed to Plaintiff due to her gender (female), and the conduct of Defendant's administrators and officials provided a climate in which the students felt empowered to continue to harass, threaten, and menace Plaintiff based on her gender (female).

91.     The constructive termination of Plaintiff's employment, and the conditions leading up to said constructive termination, were the direct and proximate result of Plaintiff's gender and/or complaints of sexual harassment, and in retaliation therefore.

92.     The acts, failures to act, practices, and policies of Defendant, as set forth above, constitute unlawful and intentional discrimination against Plaintiff because of her sex or gender, i.e. female, in violation of Title VII of the Civil Rights Act of 1964, as amended by the Equal Opportunity Act of 1972, and the Civil Rights Act of 1991, 42 U.S.C. 2000e-2.

WHEREFORE, Plaintiff respectfully requests judgment in her favor, and against Defendant, and an award granting her relief including but not limited to the following:

a)      Back pay and all other benefits, perquisites, and compensation which Plaintiff would have received had she maintained her employment, including but not limited to lost wages, pay increases, and bonuses;

b)      Front pay;

c) Reimbursement for all costs, expenses, and financial losses Plaintiff has incurred as a result of the above-described actions;

d) Reasonable attorneys' fees and costs;

e) Compensatory damages;

f) Punitive damages; and,

g) Such other relief as the Court may deem appropriate.

## COUNT III
## PENNSYLVANIA HUMAN RELATIONS ACT

93. Plaintiff hereby incorporates by reference the averments contained in Paragraphs 1 through 92 of this Complaint as though the same were set forth herein at length.

94. The aforementioned conduct of employment discrimination based upon sex, sexual harassment, and retaliation for making complaints of the same are in violation of the Pennsylvania Human Relations Act.

WHEREFORE, Plaintiff respectfully requests judgment in her favor, and against Defendant, and an award granting her relief including but not limited to the following:

a) Back pay and all other benefits, perquisites, and compensation which Plaintiff would have received had she maintained her employment, including but not limited to lost wages, pay increases, and bonuses;

b) Front pay;

c) Reimbursement for all costs, expenses, and financial losses Plaintiff has incurred as a result of the above-described actions;

d)    Reasonable attorneys' fees and costs;

e)    Compensatory damages; and,

f)    Such other relief as the Court may deem appropriate.


KOZLOFF STOUDT
Professional Corporation


Jeffrey R. Elliott, Esquire
Joan E. London, Esquire
2640 Westview Drive
Wyomissing, PA 19610
(610) 670-2552