UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

| | |
|---|---|
| MELISSA CHERKASKY, : | |
|       Plaintiff, : | |
| : | |
| v. : | No. 5:21-cv-5204 |
| : | |
| BOYERTOWN AREA SCHOOL : | |
| DISTRICT, : | |
|       Defendant. : | |

_____

**O P I N I O N**
Defendant's Motion to Dismiss, ECF No. 6 – Granted

**Joseph F. Leeson, Jr.**                                                                                              **March 2, 2022**
**United States District Judge**

## I.   INTRODUCTION

Melissa Cherkasky, a female teacher, brought suit against Boyertown Area School District under Title VII and the Pennsylvania Human Relations Act (PHRA), alleging that the District created a hostile work environment based on sex discrimination and retaliated against her for complaining about the discrimination. *See* Compl., ECF No. 1.

According to Cherkasky, the District did not take sufficient remedial actions after some of her students misbehaved in class and referred to her on two occasions as a "bitch." Cherkasky alleges that the District retaliated against her by giving her a negative performance review and by giving her the cold shoulder after she complained about the students' behavior.

The District filed a motion to dismiss the Complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *See* Mot., ECF No. 6. The District argues, among other things, that the students' misbehavior is not sex discrimination as a matter of law. It also argues that receiving a negative performance review is not retaliation as a matter of law.

The Court agrees with the District. It therefore dismisses the Complaint without prejudice.

II.   BACKGROUND

*Alleged Facts*[1]

Cherkasky, a female, started work as a teacher for the District in 2003. Compl. ¶ 10. In 2018, a male student, M.B., was assigned to Cherkasky's ninth grade English class. *See id.* ¶ 14. In September of the same year, Cherkasky contacted M.B.'s parents and the school guidance counselor to inform them of M.B.'s low grades, lack of effort in her class, and his "disrespectful attitude towards" Cherkasky. *Id.* ¶ 16. Ultimately, Cherkasky gave M.B. a failing grade, and he had to repeat her class the following school year. *See id.* ¶ 19.

While taking Cherkasky's class for a second year in row, M.B. left the classroom one day without permission and did not return for the remainder of the lesson. *See id.* ¶ 20. School security officers later found him wandering around the building. *See id.* As a result, Cherkasky met with M.B.'s parents, the school guidance counselor, and a District assistant principal. *See id.* ¶ 21. At the meeting, Cherkasky reported that M.B. was "acting out." *Id.* According to Cherkasky, M.B. "repeatedly, openly and with impunity, sneered at, scoffed at, and openly disrespected [her] authority." *Id.* ¶ 24.

Several weeks after walking out of class without permission, M.B. wrote the words "fucking bitch" on the back of one of his assignments. *Id.* ¶ 23. Cherkasky saw the words and immediately wrote a disciplinary referral to an assistant principal. *See id.* ¶ 25. After reviewing the referral, the District gave M.B. a lunch detention as punishment. *See id.* ¶ 26.

---

[1]   The facts are taken from the Complaint and accepted as true, with all reasonable inferences drawn in Cherkasky's favor. *See Lundy v. Monroe Cty. Dist. Attorney's Office*, No. 3:17-CV-2255, 2017 WL 9362911, at *1 (M.D. Pa. Dec. 11, 2017), *report and recommendation adopted*, 2018 WL 2219033 (M.D. Pa. May 15, 2018). The Court's recitation of the facts does not include legal conclusions or contentions unless necessary for context. *See Brown v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, No. 1:19-CV-1190, 2019 WL 7281928, at *2 (M.D. Pa. Dec. 27, 2019).

Later that same month, another student, A.M., put a sign on Cherkasky's classroom door that read, "Mrs. Cherkasky is bitch-made." *Id.* ¶ 29. Cherkasky reported the incident to an assistant principal. *See id.* ¶ 31. Ultimately, the District punished A.M. with "a few days of 'in-school suspension.'" *Id.* ¶ 32. Cherkasky asked the District to remove M.B. and A.M. from her class, but the District declined to do so. *See id.* ¶ 36.

Several months later, M.B. left his seat during class "in a physically threatening manner, sneered, leered and stared at [her], and stormed out of the classroom, slamming the door violently." *Id.* ¶ 37 Another student, a friend of M.B.'s, then exclaimed "you're a horrible teacher" to Cherkasky and also left the classroom without permission. *Id.* ¶ 38. Cherkasky reported the incident to an assistant principal and the School Officer. *See id.* ¶ 39. Later that same day, M.B. walked by Cherkasky's classroom "and sneered at her." *Id.* ¶ 40. Again, she reported M.B.'s behavior to the District. *See id.*

Feeling "increasingly threatened" and "without workplace remedy," Cherkasky informed the School Security Officer that "teenage males" were "openly hostile" towards her "because she was a woman." *Id.* ¶ 34. The School Officer advised her that she should "document these incidents in writing." *Id.* ¶ 35.

In March of 2020, Cherkasky complained to two different assistant principals that the District was not giving enough attention to her complaints and "that the harassment was causing her to become physically ill, and she had to seek medical attention." *Id.* ¶ 44. She also asked the District again to remove M.B. from her class. *Id.* ¶ 45. The assistant principals told her that removing M.B. from her class was not an option but that the District would place M.B. on in-school suspension "for a few days." *Id.* ¶ 46.

Cherkasky then emailed the School Building Principal, informing him of the above history. *See id.* ¶ 47. She also advised him that she was scheduled to receive therapy as a result of "the

workplace harassment allowed to exist" in the school. *Id.* ¶ 47. The Building Principal assured her that he would speak with the assistant principals about her concerns. *See id.* ¶ 48.

Shortly thereafter, the Building Principal met with Cherkasky and the District's Human Resources Director. *See id.* ¶ 49. At the meeting, Cherkasky described the "harassment" she had experienced and asked the District to remove M.B. from her class. *See id.* ¶ 51. The Building Principal denied her request to remove M.B. from her class. *See id.* As a result, she took medical leave effective March 3, 2020, and through the remainder of the school year. *See id.* ¶ 52.

Cherkasky received her end-of-year evaluation for the 2019-2020 academic year once she returned to work. *See id.* ¶ 54. According to her, the evaluation included "negative comments and remarks about [her] teaching skills which had not occurred prior to her complaints." *Id.* ¶ 56. Her usual designation as "Distinguished" had been lowered to "Proficient." *Id.* ¶ 55. She met with one of the assistant principals to discuss the evaluation. *See id.* ¶ 57.

The assistant principal denied that any of the remarks in the evaluation were derogatory. *See id.* ¶ 57. He also explained that he had downgraded her from "Distinguished" to "Proficient" in "Planning and Preparation" and "Engagement with Students" because she "did not meet requirements for the higher score." *Id.* ¶ 58. When Cherkasky asked him to elaborate further, he "refused to provide [her] with any specific basis for the downgraded evaluation or the categories" in which he had rated her as not meeting requirements for the higher score. *Id.* ¶ 59. Instead, he stated that "no one reads those things anyway." *Id.* ¶ 62.

In November 2020, Cherkasky met with the District's Human Resources Director and an assistant principal to discuss her belief that her downgraded evaluation was in retaliation for complaining about "sexual harassment and discrimination." *Id.* ¶ 66. According to Cherkasky, the District representatives "were dismissive of [her] complaints of having suffered sexual harassment and retaliation." *Id.* ¶ 67.

Throughout the remainder of the schoolyear, Cherkasky felt that the District "shunned" her "as an outcast" because of her complaints. *Id.* ¶ 68. As a result, she filed a formal charge of discrimination with the Equal Employment Opportunity Commission in March 2021. *See id.* The District's Human Resource official eventually gave Cherkasky a letter acknowledging her EEOC charge, which according to Cherkasky, was done to intimidate her. *See id.* Cherkasky resigned on June 14, 2021. *See id.* ¶ 69.

*Procedural history*

Cherkasky filed suit against the District, bringing claims under Title VII and the PHRA. Specifically, she alleges that she was subject to harassment based on her sex and that the District "failed to investigate or take remedial action regarding it." *Id.* ¶ 77. Moreover, she alleges that the District created a hostile work environment and that her resignation was a constructive termination. Lastly, she alleges that the District's evaluation of her for the 2019-2020 school year and cold behavior towards her constitutes illegal retaliation against her for complaining of sexual harassment.

The District filed a motion to dismiss Cherkasky's Complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). *See* Mot. Cherkasky then filed a response in opposition to the Motion. *See* Resp., ECF No. 8.

### III.    LEGAL STANDARD

Under Rule 12(b)(6), a defendant may make a motion to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (cleaned up). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555

(2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (*citing Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). Additionally, when ruling on a motion to dismiss, the Court may "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputed authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F. 3d 223, 230 (3d Cir. 2010).

### IV.   ANALYSIS

Cherkasky's claims against the District are twofold: a) discrimination based on sex and b) retaliation.[2] The District contends that Cherkasky has not alleged facts sufficient to support her claims as a matter of law. The Court first addresses Cherkasky's claims of discrimination and then her claim of retaliation. Ultimately, the Court dismisses Cherkasky's entire Complaint without prejudice for failing to state a claim upon which relief can be granted.

---

[2] In addition to her claim for discrimination based on sex, Cherkasky also brings a claim of sexual harassment. The two claims flow from the same alleged facts; both claims are brought under Title VII; and the analysis is the same for both claims. Thus, throughout this Opinion, the Court refers to both claims synonymously as a claim for discrimination based on sex. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998) (analyzing "sex discrimination" and "sexual harassment" the same).

### a. *Cherkasky did not sufficiently plead her claims of discrimination based on sex.*[3]

Cherkasky alleges that three of her teenage male students discriminated against her based on her sex and that the District "failed to act to remediate the matter." Resp. 15. She asserts that this combination forced her to resign because it created a hostile work environment based on sex discrimination.

Title VII prohibits employers from discriminating against "any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case of sex discrimination based on a hostile work environment, a plaintiff must show that (i) she suffered intentional discrimination because of her sex; (ii) the discrimination was severe or pervasive; (iii) the discrimination detrimentally affected her; (iv) the discrimination would detrimentally affect a reasonable employee of the same sex in that same position; and (v) respondeat superior liability. *Miller v. Thomas Jefferson Univ. Hosp.*, 565 F. App'x 88, 93 (3d Cir. 2014).

Cherkasky's claims based on sex discrimination do not make it past the first element as a matter of law because she has not alleged facts sufficient to show that she suffered intentional discrimination because of her sex.[4]

"Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at discrimination because of sex." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 118 (1998) (cleaned up). Indeed, even the use of words that "have sexual content or connotations"

---

[3] The Court analyzes Cherkasky's claims for discrimination together to the extent that they are brought under both Title VII and the PHRA because "claims of employment discrimination under . . . Title VII, and the PHRA are analyzed coextensively." *Lara v. Samuel Adams Pennsylvania Brewing Co.*, LLC, No. 5:20-CV-0498, 2020 WL 5211206, at *7 (E.D. Pa. Sept. 1, 2020) (cleaned up).

[4] The Court also has serious doubts that Cherkasky alleged facts sufficient for elements ii, iv, and v. However, since the Court determines that she fails to make it past even the first element, it does not discuss the remaining elements in detail.

is not automatically discrimination because of sex. *Id.* The plaintiff must show "that sex is a substantial factor in the harassment, and that if the plaintiff had been a male she would not have been treated in the same manner." *Bumbarger v. New Enter. Stone & Lime Co.*, 170 F. Supp. 3d 801, 826 (W.D. Pa. 2016) (cleaned up). In other words, the mere use of offensive epithets, without more, does not constitute sex discrimination as a matter of law. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

In order to satisfy the first element, Cherkasky relies almost entirely on two instances of her students referring to her as a "bitch." However, when use of "the word 'bitch' makes up a majority of the alleged misconduct, courts have concluded that this context more appropriately supports the inference that its use was merely an offensive epithet, and not based on sex." *Davis v. Se. Pennsylvania Transp. Auth.*, No. CV 13-6864, 2016 WL 97922, at *6 n. 9 (E.D. Pa. Jan. 8, 2016) (collecting cases).

Although the students' use of the term "bitch" was inappropriate, it does not, on its own, constitute sex discrimination. *See id.* at *6 (determining that defendant's reference to plaintiff as a "dumb bitch" and comment to "keep that fucking bitch" away from him did not, as a matter of law, constitute intentional discrimination); *see also Kidd v. Com. of Pennsylvania*, 37 F. App'x 588, 593 (3d Cir. 2002) (determining that calling plaintiff a "bitch" in the midst of an argument was not sexual harassment); *Reyes v. McDonald Pontiac GMC Truck, Inc.*, 997 F. Supp. 614, 617 (D.N.J. 1998) (calling the plaintiff "bitch" and "Miss Fu***** Queen Bee" was not sex discrimination).

Cherkasky argues that, when viewed alongside her other allegations of harassment, the students' use of the term "bitch" is further evidence of discrimination based on her sex. *See* Resp. 21. However, even when viewed in a light most favorable to Cherkasky, none of her other alleged acts of discrimination have anything to do with sex.

For example, she alleges that students left her class without permission, that M.B. "sneered" at her, and that M.B. slammed her classroom door. She states that their misbehavior was "solely because of [their] disdain for [her] as a female." Compl. ¶ 24. That, however, is a conclusory statement that is not supported by the alleged facts. Indeed, C.M.'s comment to Cherkasky that she was "a horrible teacher" implies that any disdain the students may have for her has to do with her teaching, not her sex. *See id.* ¶ 38.

Cherkasky's conclusory statements that the students' misbehaved "solely because she was a female" does not become a factual allegation simply because it's repeated over and over in the Complaint. *See Ashcroft*, 556 U.S. 662, 664 (2009) (holding that a plaintiff is not "entitled to the assumption of truth" when stating mere conclusions that are not supported by factual allegations). Male and female teachers alike must sometimes deal with misbehavior in their classrooms; it comes with the territory of being a teacher and normally has nothing to do with the teacher's sex. The only thing linking the students' misbehavior to Cherkasky's sex is her subjective belief. However, subjective belief alone is insufficient to maintain an unlawful discrimination claim. *See Dinnerstein v. Burlington Cty. Coll.*, 764 F. App'x 214, 217 (3d Cir. 2019).

In sum, the use of offensive epithets such as "bitch" can be further evidence of sex discrimination. However, absent other allegations of discrimination based on sex, referring to Cherkasky as a "bitch" does not constitute sex discrimination. This is especially true under these circumstances where the students did not verbally call Cherkasky a bitch and used the term only twice. Moreover, Cherkasky's other allegations of discrimination are not related to her sex. Thus, Cherkasky has not alleged facts sufficient to meet the first element of a hostile work environment based on sex because sex was not a substantial factor in the alleged harassment.[5]

---

[5] When a plaintiff's claim of constructive termination is based on an alleged hostile work environment, the "hostile work environment is a necessary predicate to a hostile-environment constructive discharge case." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 149 (2004). Since

### b.  *Cherkasky did not sufficiently plead her claim of retaliation.*

Cherkasky claims next that the District retaliated against her for making complaints that her students were harassing her. Specifically, she asserts that she received a downgraded evaluation and was ostracized by the District officials because she complained.

Under Title VII, an employer may not discriminate against an employee because she "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C.A. § 2000e-3(a). To establish a retaliation claim, a plaintiff must show that (i) she engaged in protected activity; (ii) she suffered an adverse employment action; and (iii) a causal connection between the retaliatory act and the protected activity. *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006). Cherkasky falls short of pleading sufficient facts for the second element—that she suffered an adverse employment action.

Title VII does not protect Cherkasky from all forms of retaliation, only "from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). In other words, Cherkasky must show "that 'a reasonable employee would have found the alleged retaliatory actions 'materially adverse' in that they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Hernandez v. EHC Assocs., Inc.*, No. 5:17-CV-05263, 2018 WL 3032880, at *3 (E.D. Pa. June 19, 2018) (quoting *Burlington*, 548 U.S., at 68).

Cherkasky gives two examples of alleged adverse employment actions. However, even when the facts are viewed in her favor, neither of her examples contain facts that she was caused an actual injury that would have stopped a reasonable employee from complaining of discrimination.

First, Cherkasky alleges that the District gave her a negative performance review and made "derogatory remarks" in the review. Compl. ¶ 55. However, the performance review itself is

---

the Court dismisses Cherkasky's claim of a hostile work environment, it follows that it must also dismiss her claim of constructive termination.

noticeably absent from the Complaint. And she does not say what any of the supposed derogatory remarks were. Nevertheless, even giving Cherkasky the benefit of the doubt, a negative performance review, on its own, does not produce an actual injury or harm that constitutes an adverse employment action. *See e.g., Raffaele v. Potter*, No. CIV.A. 09-3622, 2012 WL 33035, at *4 (E.D. Pa. Jan. 6, 2012) ("negative performance evaluations are not adverse employment actions); *Tucker v. Merck & Co.*, 131 F. App'x 852, 857 (3d Cir. 2005) ("A negative evaluation, by itself, is not an adverse employment action."); *Weston v. Pennsylvania*, 251 F.3d 420, 431 (3d Cir. 2001), *overruled in part on other grounds by Burlington*, 548 U.S. 53 (determining that "written reprimands" were not an adverse employment action on their own); *E.E.O.C. v. Wyeth Pharm.*, No. CIV.A. 03-2967, 2004 WL 503417, at 2 (E.D. Pa. Mar. 11, 2004) (same).

Second, Cherkasky's allegation that District officials treated her as a "pariah" after she made her complaints is not a material adverse action either (at least not in light of the facts as they are plead). *See Burlington*, 548 U.S., at 68 ("We speak of material adversity because we believe it is important to separate significant from trivial harms."). Cherkasky essentially alleges that the District stopped being nice to her after she made several complaints about some of her male students. However, "petty slights, minor annoyances, and simple lack of good manners" does not constitute retaliation as a matter of law. *See id*.

Cherkasky asserts that she was "shunned" and states in conclusory fashion that her exclusion has caused her "substantial determinant." Compl. ¶ 68. However, she does not allege any specific facts that the District's cold behavior towards her was anything more than a simple lack of good manners. For example, the District did not stop her from attending substantive work-related events. Nor does she allege that the District took any actions that prevented her professional advancement. *See Burlington*, 548 U.S., at 69 ("A supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight. But to retaliate by excluding an employee from a weekly

training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination.").

At this stage of litigation, Cherkasky's right to relief does not need to be certain, or even likely, but she must plead facts that give rise to "a right of relief above the speculative level." *Twombly*, 550 U.S. 544, 555 (2007). Simply put, she has not met this low burden for her claim of retaliation.

## V.     CONCLUSION

The Court dismisses Cherkasky's claims of sex discrimination and of a hostile work environment because the students' use of the word "bitch" on two occasions does not constitute discrimination as a matter of law. Moreover, none of Cherkasky's other alleged incidences of discrimination have to do with her sex. Since the Court dismisses Cherkasky's hostile work environment claim, it also dismisses her claim of constructive termination.

The Court dismisses Cherkasky's claim of retaliation because a negative performance review, without more, does not constitute retaliation as a matter of law. Moreover, Cherkasky's conclusory claim that the District treated her poorly after she made her complaints is not supported by factual allegations that give rise to a right of relief above the speculative level.

For these reasons, and those given above, the Complaint is dismissed without prejudice.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge
