UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

---

| | |
|---|---|
| MELISSA CHERKASKY, : | |
|     Plaintiff, : | |
| : | |
| v. : | No. 5:21-cv-5204 |
| : | |
| BOYERTOWN AREA SCHOOL : | |
| DISTRICT, : | |
|     Defendant. : | |

---

**O P I N I O N**
Defendant's Motion to Dismiss, ECF No. 13 – Granted in part and Denied in part

**Joseph F. Leeson, Jr.**                                                                                               June 6, 2022
**United States District Judge**

### I. INTRODUCTION

Melissa Cherkasky, a female teacher, brought suit against Boyertown Area School District under Title VII and the Pennsylvania Human Relations Act (PHRA), alleging that the District created a hostile work environment based on sex discrimination and that it retaliated against her for complaining about the discrimination. *See* Orig. Compl., ECF No. 1. The Court dismissed the Original Complaint for failing to state a claim upon which relief could be granted but gave Cherkasky leave to file an amended complaint, which she did. *See* Amen. Compl., ECF No. 12.

In the Amended Complaint, Cherkasky brings the same claims she brought in her Original Complaint with some additional factual allegations. The District, however, contends that the Amended Complaint still fails to state a claim upon which relief can be granted and that it should be dismissed. *See* Mot., ECF No. 13.

Accepting Cherkasky's allegations as true, the Court determines that she has not suffered discrimination based on her sex as a matter of law because the alleged discriminatory acts towards her were not based on her sex. Moreover, simply because Cherkasky was unsatisfied with the

District's response to her complaints does not, as a matter of law, make its response discriminatory. Cherkasky has therefore failed to plead her hostile work environment claim and, as a result, her claim of constructive termination also fails.

The Court, however, determines the opposite regarding Cherkasky's retaliation claim. Cherkasky's claim that the District retaliated against her has enough plausibility to survive a motion to dismiss because the District kept her from attending an important work meeting and took other steps that might dissuade a reasonable employee from making or supporting a charge of discrimination.

II.   BACKGROUND[1]

Cherkasky, a female, started work as a teacher for the District in 2003. Amen. Compl. ¶ 10. In 2018, a male student, MB, was assigned to Cherkasky's ninth grade English class. *See id.* ¶ 14. In September of the same year, Cherkasky contacted MB's parents and the school guidance counselor to inform them of MB's low grades, lack of effort in her class, and his "disrespectful attitude towards" Cherkasky. *Id.* ¶ 15. Ultimately, Cherkasky gave MB a failing grade, and he had to repeat her class the following school year. *See id.* ¶ 18.

While taking Cherkasky's class for a second time, MB left the classroom one day without permission and did not return for the remainder of the lesson. *See id.* ¶ 19. School security officers later found him wandering around the building. *See id.* Cherkasky met with MB's parents, the school guidance counselor, and a District assistant principal to discuss the incident. *See id.* ¶ 20. At the meeting, Cherkasky reported that MB was "acting out." *Id.* According to Cherkasky, MB

---

[1] The facts are taken from the Amended Complaint and accepted as true, with all reasonable inferences drawn in Cherkasky's favor. *See Lundy v. Monroe Cty. Dist. Attorney's Office*, No. 3:17-CV-2255, 2017 WL 9362911, at *1 (M.D. Pa. Dec. 11, 2017), *report and recommendation adopted*, 2018 WL 2219033 (M.D. Pa. May 15, 2018). The Court's recitation of the facts does not include legal conclusions or contentions unless necessary for context. *See Brown v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, No. 1:19-CV-1190, 2019 WL 7281928, at *2 (M.D. Pa. Dec. 27, 2019).

"repeatedly, openly and with impunity, sneered at, scoffed at, and openly disrespected [her] authority." *Id.* ¶ 23.

Several weeks after MB left class without permission, he wrote the words "fucking bitch" on the back of one of his assignments. *Id.* ¶ 22. As a result, the District punished MB by giving him a "lunch detention." *See id.* ¶ 25. Believing that the lunch detention was an inadequate form of discipline, Cherkasky emailed the District and informed it that MB's "behavior was increasingly harassing." *Id.* ¶ 26

Later that same month, another student, AM, put a sign on Cherkasky's classroom door that read, "Mrs. Cherkasky is bitch-made." *Id.* ¶ 28. Cherkasky reported the sign to an assistant principal. *See id.* ¶ 30. The District punished AM with "three-days of 'in-school suspension.'" *Id.* ¶ 32.

Believing that the District was not taking the situation seriously enough, Cherkasky contacted the school security officer. *See id.* ¶ 33. The school security officer advised Cherkasky to document the incidents in writing, which she did. *See id.* ¶ 34. Cherkasky asked that the troublesome students be removed from her class, but the District declined to do so. *See id.* ¶ 35

Several months later, MB left his seat during class, "sneered at [Cherkasky], and walked out of the classroom, slamming the door with great force." *Id.* ¶ 36. Another student, CM, then exclaimed "you're a horrible teacher" to Cherkasky and also left the classroom. *Id.* ¶ 37. Later that same day, MB walked by Cherkasky's classroom "and sneered at her." *Id.* ¶ 39.

In March of 2020, Cherkasky complained to two different assistant principals that the District was not giving enough attention to her complaints and "that the harassment was causing her to become physically ill, and she had to seek medical attention." *Id.* ¶ 45. She also asked the District again to remove MB from her class. *Id.* ¶ 46. The assistant principals told her that removing MB

from her class was not an option but that the District would place MB on in-school suspension "for a few days." *Id.* ¶ 47.

Cherkasky then emailed the School Building Principal, informing him of the above history. *See id.* ¶ 48. She also advised him that she was scheduled to receive therapy as a result of "the workplace harassment allowed to exist" in the school. *Id.* ¶ 47. The Building Principal assured her that he would speak with the assistant principals about her concerns. *See id.* ¶ 49.

Shortly thereafter, the Building Principal met with Cherkasky and the District's Human Resources Director. *See id.* ¶ 50. At the meeting, Cherkasky described the "harassment" she had experienced and asked the District to remove MB from her class. *See id.* ¶ 51. The Building Principal denied her request to remove MB from her class. *See id* ¶ *52*. Cherkasky then took medical leave effective March 3, 2020, and through the remainder of the school year. *See id.* ¶ 53.

When Cherkasky returned to work, she received her end-of-year evaluation for the 2019-2020 academic year. *See id.* ¶ 56. Her usual designation as "Distinguished" had been lowered to "Proficient." *Id.* ¶ 58. According to Cherkasky, the evaluation included "negative comments and remarks" about her teaching "which had not occurred prior to her complaints to" the District about the alleged harassment. *See id.* ¶ 59. Cherkasky met with an assistant principal to discuss her evaluation. *See id.* ¶ 64.

The assistant principal explained that he had downgraded her from "Distinguished" to "Proficient" because she "did not meet requirements for the higher score." *Id.* ¶ 66. When Cherkasky asked him to elaborate further, he "refused to provide [her] with any reason for the negative comments." *Id.* ¶ 68. Instead, he stated that "no one reads those things anyway." *Id*.

In November 2020, Cherkasky met with the District's Human Resources Director and an assistant principal to discuss her belief that her downgraded evaluation was in retaliation for complaining about "sexual harassment and discrimination." *Id.* ¶ 72. According to Cherkasky, the

District representatives "were dismissive of [her] complaints of having suffered sexual harassment and retaliation." *Id.* ¶ 82.

Cherkasky asked the District for a copy of its sexual harassment policy. She was told that "it was hidden away in a vault in the education center, and that [the District] would have to find it." *Id.* ¶ 74. However, the District did not provide her with a copy. *See id.* ¶ 75. Throughout the remainder of the school year, Cherkasky felt that she continued to "suffer retaliation, in the form of dismissiveness or outright being ignored." *See id.* ¶ 83.

Finally, Cherkasky filed a charge of discrimination against the District with the EEOC. *See id.* ¶ 76. After this charge was filed, the District provided her with a copy of its sexual harassment policy that was put into place in the summer of 2020 but not its policy from March 2020. *See id.* ¶ 78. According to Cherkasky, the District did this to conceal the prior policy and to create confusion. *See id.* ¶ 79. After requesting the prior version of the policy again, the District provided Cherkasky with a copy of the older policy. *See id.* ¶ 81.

The District's Human Resource official eventually gave Cherkasky a letter that acknowledged her EEOC charge and advised her to maintain any records that could be relevant to the charge, which according to Cherkasky, was done to intimidate her.

In Cherkasky's end of year evaluation, additional representatives from the District were present for note taking, which was not something that had happened prior to her complaints of harassment. *See id.* ¶¶ 86-87. Moreover, the District held a "mandatory business meeting for teachers" but did not invite Cherkasky to participate in the meeting even though she was in the building when it was held. *See id.* ¶¶ 88-90. Every member of the English Department attended the meeting except for Cherkasky. *See id.* ¶ 91. Cherkasky was later told that the District had "decided to have the department meeting without [her]." *Id.* ¶ 92.

According to Cherkasky, "[m]ale faculty members, and female faculty members who had not made complaints of sexual and/or gender-based harassment were not excluded from meetings and did not suffer the same humiliating treatment from colleagues and administration." *Id.* ¶ 95.

Cherkasky resigned on June 14, 2021. *See id.* ¶ 96.

Cherkasky filed the Amended Complaint against the District, bringing claims under Title VII and the PHRA. Specifically, she alleges that she was subject to harassment based on her sex and that the District "failed to investigate or take remedial action regarding it." *Id.* ¶ 105. Moreover, she alleges that the District created a hostile work environment and that her resignation was a constructive termination. Lastly, she alleges that the District's evaluation of her for the 2019-2020 school year and cold behavior towards her constitutes illegal retaliation against her for complaining of sexual harassment.

The District filed a motion to dismiss Cherkasky's Amended Complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). *See* Mot. Cherkasky then filed a response in opposition to the Motion. *See* Resp., ECF No. 14.

### III.   LEGAL STANDARD

Under Rule 12(b)(6), a defendant may make a motion to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (cleaned up). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (*citing Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). Additionally, when ruling on a motion to dismiss, the Court may "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputed authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F. 3d 223, 230 (3d Cir. 2010).

## IV.    ANALYSIS

Cherkasky brings two claims against the District: a) discrimination based on sex that culminated in her constructive discharge and b) retaliation.[2] The District contends that Cherkasky has not alleged facts sufficient to support her claims as a matter of law.

The Court notes that in the context of discrimination and retaliation in violation of Title VII, Cherkasky does not need to plead the prima facie elements to survive a motion to dismiss. *Doe v. Triangle Doughnuts, LLC*, 472 F. Supp. 3d 115, 125–26 (E.D. Pa. 2020). However, she does need to allege enough facts to give rise to a reasonable expectation that discovery will reveal evidence of her claims' necessary elements. *See id*. In other words, the Amended Complaint must have "facial plausibility."

---

[2]    In addition to her claim for discrimination based on sex, Cherkasky also brings a claim of sexual harassment. The two claims flow from the same facts; both claims are brought under Title VII; and the analysis is the same for both claims. Thus, throughout this Opinion, the Court refers to both claims synonymously as a claim for discrimination based on sex. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998) (analyzing "sex discrimination" and "sexual harassment" the same).

The Court first addresses Cherkasky's claims of discrimination and then her claim of retaliation.

### a. *Claims of discrimination based on sex.*[3]

Title VII prohibits employers from discriminating against "any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case of sex discrimination based on a hostile work environment, a plaintiff must show that (i) she suffered intentional discrimination because of her sex; (ii) the discrimination was severe or pervasive; (iii) the discrimination detrimentally affected her; (iv) the discrimination would detrimentally affect a reasonable employee of the same sex in that same position; and (v) respondeat superior liability. *Miller v. Thomas Jefferson Univ. Hosp.*, 565 F. App'x 88, 93 (3d Cir. 2014).

Cherkasky's discrimination claims are twofold: 1) that three of her teenage male students discriminated against her based on her sex, and 2) that the District's response to her complaints was a form of discrimination in itself because it would have treated complaints from male teachers more seriously. She asserts that this combination forced her to resign because it created a hostile work environment based on sex discrimination.

Neither of Cherkasky's allegations of discrimination give rise to facial plausibility. The Court discusses both in turn.

---

[3]    The Court analyzes Cherkasky's claims for discrimination together to the extent that they are brought under both Title VII and the PHRA because "claims of employment discrimination under . . . Title VII, and the PHRA are analyzed coextensively." *Lara v. Samuel Adams Pennsylvania Brewing Co.*, LLC, No. 5:20-CV-0498, 2020 WL 5211206, at *7 (E.D. Pa. Sept. 1, 2020) (cleaned up).

1. **The alleged facts do not establish that the students' behavior was because of Cherkasky's sex.**

The first and most crucial element to Cherkasky's discrimination claim is that she must have suffered discrimination because of her sex. The Court dismissed the Original Complaint because it did not allege that her students behavior was based on her sex. After stripping the Amended Complaint of its conclusory statements, it simply repeats the same allegations Cherkasky made in her Original Complaint. As a result, the Amended Complaint suffers from the same defects as the Original Complaint when it comes to Cherkasky's claim that her students discriminated against her based on her sex.[4]

Accepting Cherkasky's allegations as true, the acts of her three troublesome male students can be summarized as follows: (1) MB left class without permission twice; (2) MB wrote "fucking bitch" on the back of an assignment; (3) AM put a sign on her classroom door that read "Mrs. Cherkasky is bitch-made"; (4) CM told her that she was "a horrible teacher" and left class without permission; and (5) MB "sneered" and "scoffed" at her on various occasions.

Most of the students' behavior has nothing to do with Cherkasky's sex.  Cherkasky does not make any factual allegations to support that the students left her classroom without permission because of her sex. Nor does she point to any facts that might suggest that MB sneered at her because of her sex. CM told her that she was a horrible teacher; he did not say that he thought she was a horrible teacher because of her sex. The only thing linking these relatively few instances of misbehavior to Cherkasky's sex is her own subjective belief.

However, subjective belief alone is insufficient to maintain an unlawful discrimination claim. *See Dinnerstein v. Burlington Cty. Coll.*, 764 F. App'x 214, 217 (3d Cir. 2019).Without

---

[4] Since Cherkasky's claims of discrimination based on sex are essentially the same in the Amended Complaint, this section of this Opinion is mostly a restatement of the Court's analysis in its March 2, 2022, Opinion. *See* ECF No. 10.

additional supporting factual allegations, the Court can only assume that the misbehavior was directed at Cherkasky based on her sex, but the Court is not required to assume facts in her favor in order to save her claims from dismissal. *See Ashcroft*, 556 U.S. 662, 664 (2009) (holding that a plaintiff is not "entitled to the assumption of truth" when stating mere conclusions that are not supported by factual allegations).

Cherkasky asserts that the misbehavior was "directed at [her] because she was a woman." Amend. Compl. ¶ 33. However, this is a conclusory statement, not a factual allegation. Cherkasky made similar conclusory statements in her Original Complaint and has simply reworded them in the Amended Complaint. Altering the phrasing slightly, however, does not transform a conclusory statement into a factual allegation.

The only instances of misbehavior that could possibly be attributed to Cherkasky's sex are the two times that her students wrote the word "bitch." However, the use of words that "have sexual content or connotations" is not automatically discrimination because of sex. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 118 (1998). Indeed, the use of offensive epithets, such as the word "bitch", without more, is not sex discrimination as a matter of law. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

Cherkasky's claim that her students discriminated against her based on her sex relies almost entirely on the two instances of her students writing the word "bitch." When use of "the word 'bitch' makes up a majority of the alleged misconduct, courts have concluded that this context more appropriately supports the inference that its use was merely an offensive epithet, and not based on sex." *Davis v. Se. Pennsylvania Transp. Auth.*, No. CV 13-6864, 2016 WL 97922, at *6 n. 9 (E.D. Pa. Jan. 8, 2016) (collecting cases).

Although the students' use of the term "bitch" was inappropriate, it does not, on its own, constitute sex discrimination. *See id.* (determining that defendant's reference to plaintiff as a "dumb

bitch" and comment to "keep that fucking bitch" away from him did not, as a matter of law, constitute intentional discrimination); *see also Kidd v. Com. of Pennsylvania*, 37 F. App'x 588, 593 (3d Cir. 2002) (determining that calling plaintiff a "bitch" in the midst of an argument was not sexual harassment); *Reyes v. McDonald Pontiac GMC Truck, Inc.*, 997 F. Supp. 614, 617 (D.N.J. 1998) (calling the plaintiff "bitch" and "Miss Fu***** Queen Bee" was not sex discrimination).

Cherkasky cites to two cases to support her argument that being referred to as a "bitch" is sufficient to establish a claim of discrimination. Neither case, however, stands for the proposition that Cherkasky purports.

Cherkasky first cites to *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157 (3d Cir. 2013). In *Mandel*, the plaintiff sued her employer alleging, among other things, discrimination based on sex. *See id.* at 161. The district court dismissed the complaint, and the Third Circuit Court of Appeals remanded the issue of whether the alleged discrimination was severe or pervasive because the district court had "improperly parsed out each event and viewed them separately, rather than as a whole." *Id.* at 168. Here, the Court does not comment on whether the students' behavior was severe or pervasive. Moreover, this Court has considered the totality of the circumstances and determines that the students' use of the word "bitch", even when considered in light of the other alleged misbehavior, does not constitute discrimination based on Cherkasky's sex and does not give rise to facial plausibility that such a claim could be proven through discovery.

The second case Cherkasky cites to is *E.E.O.C. v. Turkey Hill Dairy, Inc.*, No. 06-CV-04332, 2007 WL 2407095 (E.D. Pa. Aug. 8, 2007). In *Turkey Hill Dairy, Inc.*, an employee sued his employer for sexual harassment based, in part, on coworkers calling him names such as "bitch." *See id.* at *2. While it is true that the *Turkey Hill Dairy, Inc.* court denied the employer's motion to dismiss, the discriminatory acts in that case are not analogous to the acts in this case. In *Turkey Hill Dairy Inc.*, the plaintiff's coworkers did more than simply refer to him as a "bitch." They called him

a variety of other demeaning names, such as "whore" and "faggot." *Id.* They also "made crude gestures implying homosexual behavior toward [the plaintiff]." *Id.* Moreover, the plaintiff's coworkers, "blew kisses to and whistled at [the plaintiff]," and "implied that [the plaintiff] had engaged or wished to engage in sexual acts with other male co-workers." *Id.* The students' actions in this case simply do not rise to the same level, and Cherkasky has not pled facts that imply that discovery would reveal any misbehavior that was based on her sex.

The Court also notes that the students use of the word "bitch" in this case, while offensive, is much less egregious than the use of similar offensive epithets in other cases, some of which are cited in this Opinion, where courts have determined that a claim for discrimination did not lie. Here, the students did not say the word vocally. In both instances, the students wrote the word. One of the locations was rather obscure—the back of an assignment.

In sum, the students' use of the word "bitch," even in light of the other alleged misbehavior, does not support a claim for discrimination based on sex as a matter of law.

2. **The District's response to Cherkasky's complaints was not discrimination based on sex.**

Cherkasky next argues that even if the students' behavior was not discriminatory, then the District's response to her complaints constitutes discrimination based on sex.

Although this type of claim is rather novel, it appears that, at least in the Third Circuit, an employer's failure to investigate claims of harassment can be discrimination in violation of Title VII if the failure to investigate is based on the victim's sex.[5] *See Hare v. Potter*, 220 F. App'x 120, 134 (3d Cir. 2007). Such a claim, however, does have certain limitations.

---

[5] Other Circuits, such as the Second and Tenth, do not recognize a claim of discrimination against an employer for failing to investigate claims of harassment. *See e.g., Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 640–41 (10th Cir. 2012); *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010).

"For example, the issue complained of, if left uncorrected, must be of enough significance to qualify as an adverse action." *McFalls v. BrightView Landscapes, LLC*, No. CV 18-2871, 2020 WL 1922828, at *7 (E.D. Pa. Apr. 21, 2020). An adverse employment action "is one which is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Jakomas v. City of Pittsburgh*, 342 F. Supp. 3d 632, 643 (W.D. Pa. 2018) (quoting *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001)). "When an employee's salary, reporting requirements, and general duties remain the same, there is typically insufficient evidence of an adverse employment action." *Id*. Also, the alleged acts that the employer fails to investigate must be of a serious nature. *See Kuhn v. United Airlines*, 63 F. Supp. 3d 796, 804 (N.D. Ill. 2014), aff'd sub nom. 640 F. App'x 534 (7th Cir. 2016). Finally, this type of claim does not lie when a plaintiff is merely unsatisfied with the results of the employer's investigation. *See McFalls*, No. CV 18-2871, 2020 WL 1922828, at *7.

Here, Cherkasky does not allege that she suffered an adverse employment action.[6] Any supposed deficiency in the District's investigation cannot, by itself, be an adverse action. *See id*. As a result, the District's response to her complaints of harassment cannot be discrimination based on sex as a matter of law.

Even if Cherkasky had alleged an adverse employment action, this claim would still fail because the Court has already determined that the students' misbehavior was not discrimination as a

---

[6] Cherkasky does claim constructive termination based on an alleged hostile work environment, which could be an adverse employment action. However, since the Court determines that Cherkasky has not sufficiently alleged a hostile work environment as a matter of law, it follows that her resignation cannot serve as the necessary adverse employment action needed for her claim that the District's response to her complaints was discriminatory.
  Moreover, when a plaintiff's claim of constructive termination is based on an alleged hostile work environment, the "hostile work environment is a necessary predicate to a hostile-environment constructive discharge case." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 149 (2004). Since the Court dismisses Cherkasky's claim of a hostile work environment, it follows that it must also dismiss her claim of constructive termination.

matter of law. *See Kuhn*, 63 F. Supp. 3d 796, 804, aff'd sub nom. 640 F. App'x 534 (dismissing similar claim where the defendant failed to fully investigate the plaintiff's complaints for "run-of-the-mill harassment or mistreatment"). In other words, the underlying acts complained of must be of a serious enough nature that they could constitute discrimination itself, and the acts that Cherkasky complained of to the District—the students' misbehavior—does not rise to this level.

Finally, this claim is barred as a matter of law because Cherkasky acknowledges in the Amended Complaint that the District provided at least *some* response to her complaints. *See McFalls*, No. CV 18-2871, 2020 WL 1922828, at *7 ("an employee should not be able to pursue a discrimination claim on the basis of an employer's allegedly inadequate investigation when the employer has engaged in a good-faith investigation").

Further discovery is not needed to determine whether the District took *any* action in response to Cherkasky's complaints. The face of the Amended Complaint shows that the District punished the troublesome students with lunch detention and in school detention for their misbehavior in Cherkasky's class. It also shows that Cherkasky had access to Human Resources as well as a school security officer. Cherkasky may have chosen more severe punishments for the students, but how she would have preferred to handle the situation is not the relevant standard. *See id.* [7]

---

[7] The Court notes that whether the District could be liable for a student's discriminatory acts and whether the District's failure to investigate constitutes discrimination on its own are two different questions.
   The former is a question of fact because it asks whether the District did enough to stop the student's discriminatory acts. If not, then the District could be liable for the student's acts even if it performed some kind of investigation. This is not at issue in this case because the Court determined that the students' acts were not discriminatory.
   The latter question can be decided at this stage of litigation, at least in this case, because it asks only whether the District performed some sort of investigation; it is not concerned with whether the District's response was adequate to stop the underlying acts complained of.

For the above reasons, the Court dismisses all of Cherkasky's claims based on discrimination, including her claim of constructive discharge.[8] Having addressed Cherkasky's claims of discrimination, the Court now moves on to her claim of retaliation.

### b. *Claim of retaliation.*

Under Title VII, an employer may not discriminate against an employee because she "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C.A. § 2000e-3(a). To establish a retaliation claim, a plaintiff must show that (i) she engaged in protected activity; (ii) she suffered an adverse employment action; and (iii) a causal connection between the retaliatory act and the protected activity. *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006).

In the context of a claim of retaliation, the bar to prove an adverse employment action is lower than it is in the context of a discrimination claim. The plaintiff need only show that the challenged action might have dissuaded a reasonable employee from making or supporting a charge of discrimination. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 54 (2006).

The District does not dispute that Cherkasky was engaged in a protected activity. It contends only that her claim of retaliation should be dismissed because she did not suffer an adverse employment action. Specifically, the District argues that Cherkasky's lowered rating on her performance evaluation is not retaliation as a matter of law. The Court agrees with the District that a negative performance evaluation by itself is not an adverse employment action. *See Tucker v. Merck & Co.*, 131 F. App'x 852, 857 (3d Cir. 2005). However, Cherkasky pleads more than that in the Amended Complaint.

---

[8] The Court notes that its dismissal of Cherkasky's claim that the District's failure to fully investigate her complaints constituted discrimination does not preclude her from arguing that the same failure to fully investigate was done in retaliation. *See, e.g., Scott v. Sunoco Logistics Partners, LP*, 918 F. Supp. 2d 344, 356 (E.D. Pa. 2013) (analyzing plaintiff's claim that the employer failed to fully investigate in the context of a retaliation claim).

For example, she also alleges that the District intentionally hid its policy on sexual harassment after she asked for it. She alleges that extra District officials attended her end of year evaluation. Importantly, she alleges that the District excluded her from a mandatory meeting for teachers in her department. *See Burlington*, 548 U.S. 53, 69 (2006). (explaining that excluding an employee from important work meetings could constitute unlawful retaliation).

The District may find these examples to be trivial, and a jury could find so as well. However, at this stage of the litigation, Cherkasky need only allege facts that give her claim of retaliation facial plausibility. When viewed in their totality, Cherkasky has pleaded sufficient facts to show that the District's actions may have dissuaded a reasonable employee from making or supporting a charge of discrimination. As a result, this claim survives the District's Motion.

V.     CONCLUSION

The Court dismisses Cherkasky's claims of sex discrimination and of a hostile work environment because the students' use of the word "bitch" on two occasions does not constitute discrimination as a matter of law. Moreover, none of Cherkasky's other alleged incidences of discrimination have to do with her sex. Since the Court dismisses Cherkasky's hostile work environment claim, it also dismisses her claim of constructive termination.

Also, the Court dismisses Cherkasky's claim of discrimination to the extent that she argues the District's response to her complaints was discriminatory by itself because the District did not treat her complaints with total indifference. The Court dismisses her claims of discrimination and constructive discharge with prejudice.[9]

---

[9]     The Court dismisses these claims with prejudice because Cherkasky had an opportunity to cure her claims' deficiencies but did not. Any additional amendments would therefore be futile. *See Boyd v. New Jersey Dept. of Corrections*, 583 Fed. Appx. 30, 32 (3d Cir. 2014).

The Court, however, denies the District's Motion as it relates to Cherkasky's claim of retaliation because she has pleaded sufficient facts to give this claim facial plausibility. Cherkasky's claim of retaliation will therefore go forward.

For these reasons, and those given above, the Motion is granted in part and denied in part.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge